United States District Court
Southern District of Texas
**ENTERED**
July 29, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DAVID GARDNER, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 4:19-CV-4534 |
| | § | |
| UNION PACIFIC RAILROAD, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND ORDER**

**I.**

Before the Court is the defendant's, Union Pacific Railroad Company, amended motion for summary judgment [DE 19], the plaintiff's, David Gardner, response [DE 20], and the defendant's reply in support of its motion for summary judgment [DE 22]. After a careful review of the matters presented, including the plaintiff's complaint, the Court determines that the defendant's motion should be denied.

**II.**

The plaintiff began his employment with the defendant in June of 2014, as a locomotive electrician. As such, his duties were to ensure that the electrical systems of the locomotives met Federal Railroad and Union Pacific standards, all required upkeep of the trains, the safety of his fellow employees, and the communities through which the trains pass. To fulfill his duties, the plaintiff performed safety and maintenance inspections on the locomotives electrical systems, performed troubleshooting and

maintenance, and diagnostic tests concerning any malfunctions. These duties often required the plaintiff to work on high and low voltage equipment.

The defendant, Union Pacific, is a Class I freight railroad with connections and links in 23 states throughout the United States. In January of 2016, the plaintiff sought and secured an approved medical leave. He returned to regular employment on or about January 18, 2016. On February 3, in conversation with his supervisor, he reported that while he was out on leave, he traveled to Israel and volunteered his services through an organization called Volunteers for Israel. He showed pictures of himself, other volunteers posing on a tank and at least one armed Israeli soldiers.

That exchange set off a chain of events that resulted in the defendant directing the plaintiff to contact the Employee Assistance Program ["EAP"] in Health and Medical Services ["HMS"] to determine the plaintiff's fitness for duty. The supervisor claims that the plaintiff showed pictures of himself "with an assault rifle [and] in an Israeli military uniform." According to his reported conversation with his own supervisor, the plaintiff's supervisor describes the conversation as "unnerve[ing]". He further stated that on a previous occasion, unrelated in time to the reported conversation between he and the plaintiff, the plaintiff stated that "he felt like if he didn't leave right now, he was going to shoot somebody." It is undisputed that these latter alleged remarks occurred at a time somewhat distant from the January, 2016 conversation.

As a result of the conversation between the plaintiff and his supervisor upon his return, the shop operations manger contacted EAQP and HMS and made a "manager referral" for "fitness for duty" regarding the plaintiff. It is undisputed that the

defendants' managers have a right to refer or initiate a fitness for duty review for an employee when they are concerned about an employee's fitness for duty. However, here the plaintiff was pulled from service and placed on a 60-day medical leave of absence pending a psychological evaluation.

On three occasions, between April and June of 2016, the plaintiff failed to report for appointments with the defendant's evaluating physician. Due to the plaintiff's failure to report, the defendant's manager(s) again informed the plaintiff that he would be required to complete certain paperwork for the doctor's review, and report to the doctor. The plaintiff continued to refuse to do the paperwork or report. Finally on May 18, the defendant sent the plaintiff a third and final notice concerning his failure to comply, and set June 15 as the final opportunity for him to complete an appointment. Again, the plaintiff failed and refused. On August 24, the defendant dismissed the plaintiff from his employment for insubordination – failing to report for a medical evaluation.

### III.

### - A –

On August 15, 2016, the plaintiff filed a charge of discrimination with the EEOC alleging that he was wrongfully terminated in violation of the ADA 42 U.S.C. §§ 12102(1) *et. seq*. In an April 12, 2016, letter to the EEOC the plaintiff asserted that he was being discriminated against based on his race, religion, age and Veteran status. On August 15, 2016, he signed a Charge of Discrimination with the EEOC, adding a claim that he was being regarded as disabled even though he was not disabled. Therefore, the plaintiff asserts that the defendant's motion for summary judgment should be denied.

- B –

The defendant contends that the plaintiff is not disabled under the ADA, that he has the burden to establish that he has a disability, or that the defendant regarded him as having a disability and, therefore, subjected him to an adverse action. The defendant further contends that it had a legitimate, nondiscriminatory basis for its actions that have not been overcome by the plaintiff's evidence. Hence, it is entitled to summary judgment on the plaintiff's ADA claim and his impermissible medical examination claim.

## IV. STANDARDS OF REVIEW

### A. *Summary Judgment Standard*

A movant is entitled to a summary judgment where there is no genuine issue of material fact as to each of the elements of the non-movant. Claim(s) and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P., Rule 56(a). The burden to establish the absence of a genuine issue of a material fact as to the nonmovant's claim rests on the movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Hence, the undisputed fact issues must be outcome determinative in order for the movant to receive a judgment as a matter of law. *Hanchey v. Energas Co.,* 925 F.2d 96, 97 (5th Cir. 1990). Once the movant bears his burden, the burden of persuasion shifts to the nonmovant to establish that summary judgment should not issue. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998). In all instances, the evidence must be viewed in light most favorable to the nonmovant, indulging all justifiable or reasonable inferences. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254 (1986).

### B. Other Relevant Authorities

The American with Disabilities Act Amendments Act of 2008 ("ADAAA") provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "disability" with respect to an individual, is defined within the meaning of the Act to include: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment." 42 U.S.C. § 12102(1). A "qualified individual" within the meaning of the Act is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C.A. § 12111(8).

"To establish a prima facie discrimination under the ADA, a plaintiff must prove: (1) that he is disability, or is regarded as disabled; (2) that he is qualified for the job; [and] (3) that he was subject to an adverse employment decision on account of his [or presumed] disability. *E.E.O.C. v. LHC Grp., Inc.,* 773 F.3d 688, 697 (5th Cir. 2014)(quoting *Zenor v. El Paso Healthcare Sys., Ltd.,* 176 F.3d 847, 853 (5th Cir. 1999)). The "'[f]ailure to establish an actual or perceived disability is [ ] fatal to a plaintiff's case,' and no further consideration is required." *Willis v. Noble Envtl. Power, LLC,* 143 F. Supp. 3d 475, 479 (N.D. Tex. 2015), *appeal dismissed* (Feb. 26, 2016) (citing *McInnis*

*v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 280 (5th Cir. 2000); *see Waldrip v. Gen. Elec. Co.,* 325 F.3d 652, 654 (5th Cir. 2003)).

## V. ANALYSIS AND DISCUSSION

In the case at bar, neither the plaintiff nor the defendant asserts that the plaintiff is disabled. In fact, the plaintiff never claimed that he was disabled. Instead, he states that ethnic and/or religious bias placed him in the untenable position of either disclosing his medical condition [PTSD] for which he had already received counseling or submitting to unspecified treatment chosen by the defendant's physician after submitting to his own physician. Upon returning to work, he presented to HR a release to return to work note that did not have restrictions.

The Court is of the opinion that the plaintiff's supervisor's report was not based on observations of the plaintiff's conduct or a failure to perform his duties. The plaintiff alleges that his supervisor's haste to disparage him is religion/ethnic related bias, and not based on objective facts. The Court agrees. The evidence received raises a disputed issue of fact as to whether a factfinder will accept the defendant's proferred "legitimate, nondiscriminatory" basis for terminating the plaintiff's employment.

The defendant states as a basis for the termination that it has a duty to maintain safety in the workplace, its equipment and along its rail routes. However, the defendant has failed to point to any unsafe act committed by the plaintiff in the workplace. In fact, all of the testimony and documents support the view that the plaintiff was performing his duties appropriately, reporting to work according to schedule and completing each task.

There is no evidence that the plaintiff intentionally or carelessly placed his fellow employees, the defendant's equipment, or the public at risk.

A jury may determine that the representations of the plaintiff's supervisor were distortions and not fact based, totally unrelated to the plaintiff's fitness to work. Hence, the defendant's investigation fails to support the supervisor's view and was not based on an investigation that included the plaintiff's HR records. The defendant's managers did not interview the plaintiff or his co-workers concerning any risks. For a legitimate, non-discriminatory basis to stand, it must be fact based and not based in suppositions or personal bias.

### VI. CONCLUSION

The evidence shows that the plaintiff was released to return to work after taking a medical leave of absence. The defendant ignored the plaintiff's physician's statement and sought a finding from its chosen physician. Therefore, the defendant's motion for summary judgment is Denied.

It is so Ordered.

SIGNED on this 29th day of July, 2021.

_____
Kenneth M. Hoyt
United States District Judge